UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BSD, INC., a California corporation, 21st CENTURY GROUP, INC., a California corporation; and YOUSTINE, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>EQUILON ENTERPRISES, LLC, a Delaware limited liability company, ANABI OIL CORPORATION, a California corporation, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No: C 10-05223 SBA<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO REMAND ACTION AND MOTION FOR ATTORNEYS' FEES AND COSTS**<br><br>Dkt. 26 |

Plaintiffs bring this action against Defendants under California franchise law. The parties are presently before the Court on Plaintiffs' Motion to Remand Action and Motion for Attorneys' Fees and Costs. Dkt. 26. Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Plaintiffs' motions for the reasons set forth below. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I. FACTUAL BACKGROUND

Plaintiffs BSD, Inc., 21st Century Group, Inc., and Youstine, Inc. (collectively referred to herein as "Plaintiffs") each are franchisees operating Shell-branded motor fuel service stations in California. Compl. ¶¶ 1-3, 16. Defendant Equilon Enterprises, LLC ("Equilon") is the franchisor and owner of the fuel station premises leased by Plaintiffs. Id. ¶ 8. Equilon is wholly-owned by Shell Oil Products US, and Equilon does business under the name "Shell Oil Products US." Bleau Decl. ¶ 4, Dkt. 27.

In July 2010, Defendant Anabi Oil Corporation ("Anabi") acquired the interests of Shell Oil Products US in approximately eighty-eight Shell-branded retail locations in California. Bleau Decl. ¶ 4. In a letter dated June 17, 2010, Shell Oil Products US informed Plaintiffs of its plan to assign Plaintiffs' current Retail Sales Agreements to Anabi. Bleau Decl. ¶ 5 & Exs. 5, 6; Compl. ¶ 9. Subsequently, in a letter dated July 9, 2010, Shell Oil Products US informed Plaintiffs that it assigned its interest in each Plaintiff's Retail Facility Lease, Retail Sales Agreement, and all other agreements in effect at that time to Anabi, effective July 7, 2010. Bleau Decl. ¶ 6 & Ex. 7; Compl. ¶ 9. The letter also instructed Plaintiffs to send all future rental payments to Anabi. Bleau Decl. ¶ 6 & Ex. 7. Finally, on August 18, 2010, Equilon conveyed to each Plaintiff a "right of first refusal" offer ("ROFR") to purchase its respective service station. Bleau Decl. ¶ 3; Compl. ¶ 10. Each ROFR states that the purchase price for the land, improvements, and equipment of the station properties is based on an offer from Anabi to purchase the same. Bleau Decl. ¶ 3; Compl. ¶¶ 10-13. Plaintiffs allege that "Equilon has agreed to sell its interest in multiple fee properties, third party leased stations and oper [sic] dealer accounts, as part of a larger 'bulk sale,' to Anabi, which transaction includes but is not limited to each of Plaintiffs' leased marketing premises." Compl. ¶ 9.

On September 27, 2010, each Plaintiff accepted its respective ROFR under protest and a reservation of rights, contending, inter alia, that "the amounts set forth in the Offer for the land, improvements and equipment are excessive, do not approach fair market value and Equilon's Offer regarding same does not constitute a bona fide offer as required by California Business and Professions Code Section 20999.25 …." Bleau Decl. ¶ 3 & Exs. 2-3 at 1-2. Specifically, Plaintiffs allege that "the sale prices in each of the respective ROFRs exceed the fair market value of the properties being sold."[1] Compl. ¶ 11.

Plaintiffs further allege that if they are able to purchase their properties, they may eventually choose to rebrand their stations to another franchisor's flag, such as Chevron, "76," Valero, or ARCO. Bleau Decl. ¶ 7. Plaintiffs assert that if they do re-brand, Anabi will

---

[1] Plaintiffs do dispute in their Complaint or moving papers that the ROFRs were timely presented under California Business & Professions Code § 20999.25(a).

necessarily no longer be their gasoline supplier, which would result in substantial loss of revenue to Anabi and Equilon. Id. Moreover, according to Plaintiffs, if Anabi instead purchases the station properties at the allegedly inflated prices, Plaintiffs will remain tenants, with Anabi becoming their landlord instead of Equilon, to whom Plaintiffs will pay rent. Id. ¶ 8. Plaintiffs aver that this would prevent Plaintiffs' ability to re-brand at their respective locations, securing Anabi's investment in purchasing Plaintiffs' supply agreements from Equilon. Id.

## II.	PROCEDURAL BACKGROUND

Plaintiffs filed this action in the Superior Court of the State of California, County of Sonoma, on November 2, 2010. Dkt. 1. The gravamen of Plaintiffs' Complaint concerns whether Equilon's ROFRs to Plaintiffs complied with California law. Plaintiffs bring the following claims: (1) damages, injunctive relief, and other equitable relief against Equilon for violations of California Business & Professions Code §§ 20999, et seq.; (2) injunctive, restitution, and other equitable relief against Equilon for violations of California Business & Professions Code §§ 17200, et seq.; and (3) declaratory relief against Equilon and Anabi.

Specifically, in their First Claim, Plaintiffs assert that Equilon violated California Business & Professions Code § 20999, et seq., by failing to provide a "bona fide" right of first refusal.[2] Compl. ¶¶ 14-22. In their Second Claim, brought against Equilon under Business & Professions Code §§ 17200, et seq. (the "UCL"), Plaintiffs assert that Equilon engaged in "unfair and/or fraudulent business practices" by violating Section 20999, et seq. Id. ¶¶ 29-39. Finally, with their Third Claim – which is the only claim asserted against Anabi – Plaintiffs seek a declaration regarding "[w]hether Equilon should be enjoined from selling the subject premises and whether Anabi should be enjoined from purchasing the subject premises pursuant

---

[2] Section 20999.25(a) provides: "In the case of leased marketing premises as to which the franchisor owns a fee interest, the franchisor shall not sell, transfer, or assign to another person the franchisor's interest in the premises unless the franchisor has first either made a bona fide offer to sell, transfer, or assign to the franchisee the franchisor's interest in the premises … or if applicable, offered to the franchisee a right of first refusal of any bona fide offer acceptable to the franchisor made by another to purchase the franchisor's interest in the premises."

to California Business and Professions Code § 20999.3 until the conclusion of this action." Id. ¶ 41(e). Section 20999.3 provides for, among other things, temporary and permanent injunctive relief for violations of Section 20999, et seq.

On November 17, 2010, Equilon removed the action to this Court on diversity grounds. Plaintiffs are California corporations. Id. ¶¶ 1-3. Equilon is a Delaware limited liability company, and Anabi is a California limited liability company. Id. ¶¶ 4-5. In its Notice of Removal, Equilon asserts that the citizenship of Anabi should be disregarded because Anabi is a "sham" or fraudulently joined defendant. Notice of Removal ¶ 7, Dkt. 1. Specifically, Equilon contends that "Plaintiffs have not even *alleged* that any such cause of action exits against Anabi, much less presented factual allegations which could form the basis of a substantive claim against Anabi." Id. (emphasis in original).

Now, Plaintiffs have filed a motion to remand this action and for attorneys' fees and costs, on the ground that Equilon "cannot meet its burden for establishing fraudulent joinder of the non-diverse defendant in this Action, Anabi Oil Corporation." Pls.' Mtn. at 2, Dkt. 26.

## III.  LEGAL STANDARD

A suit filed in state court may be removed to federal court by the defendant if the federal court has original subject matter jurisdiction over the suit. 28 U.S.C. § 1441(a); Snow v. Ford Motor Co., 561 F.2d 787, 789 (9th Cir. 1977). Under section 1441(b), an action may be removed if the complaint alleges "a claim or right arising under the Constitution, treaties or laws of the United States …." Alternatively, an action may be removed only "if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). "[J]urisdiction must be analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments[.]" Sparta Surgical Corp. v. National Ass'n of Secs. Dealers, Inc., 159 F.3d 1209, 1213 (9th Cir. 1998).

Removal of a civil action that alleges claims against a non-diverse defendant is proper where it appears that such defendant has been fraudulently joined. Mercado v. Allstate Ins. Co., 340 F.3d 824, 826 (9th Cir. 2003); McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339

(9th Cir. 1987).  A party is fraudulently joined where there is "no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant." Plute v. Roadway Package Sys., 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001); see also Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998) ("If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the joinder of the resident defendant is fraudulent."); Dodson v. Spiliada Maritime Corp., 951 F.2d 40, 42-43 (5th Cir. 1992) (in evaluating fraudulent joinder claims, a court is "to determine whether [the non-moving] party has any possibility of recovery against the party whose joinder is questioned … [w]e do not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so.") (internal citations omitted).

There is a presumption against fraudulent joinder.  Hamilton Materials Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007).  Accordingly, "[f]raudulent joinder must be proven by clear and convincing evidence." Id.  Fraudulent joinder claims may be resolved by "piercing the pleadings" and considering summary judgment-type evidence such as affidavits and deposition testimony.  Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting Cavallini v. State Farm Mut. Auto Ins. Co., 44 F.3d 256, 259 (5th Cir. 1995)). However, the court must resolve "all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party." Plute, 141 F. Supp. 2d at 1008 (quoting Dodson, 951 F.2d at 42).

## IV. ANALYSIS

### A. MOTION TO REMAND ACTION

In support of their motion for remand, Plaintiffs argue that their Third Claim for declaratory relief – which Plaintiffs concede is the only claim asserted against the non-diverse defendant Anabi – is a viable claim.  See Pls.' Mtn. at 8.  California Code of Civil Procedure § 1060 provides for declaratory relief as follows:

> Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property …may, in cases of

> actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, whether or not further relief is or could be claimed at the time …. (Emphasis added.)

Under Section 1060, "[d]eclaratory relief is not available unless there is a real dispute between parties, involving justiciable questions relating to their rights and obligations." Taxpayers for Improving Public Safety v. Schwarzenegger, 172 Cal. App. 4th 749, 768 (2009) (quotations omitted). "The fundamental basis of declaratory relief is an actual, present controversy." Id. "An actual controversy is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts. The judgment must decree, not suggest, what the parties may or may not do." Id. (quotations omitted).[3]

As indicated, here, the sole relief Plaintiffs seek as against Anabi is a declaration regarding "[w]hether Equilon should be enjoined from selling the subject premises and whether Anabi should be enjoined from purchasing the subject premises pursuant to California Business and Professions Code § 20999.3 until the conclusion of this action." Compl. ¶ 41(e). In arguing that this is a viable claim against Anabi, Plaintiffs assert in their motion that they named Anabi as a co-defendant to "challenge Anabi's assertion that it[]s third party offers to Equilon were nothing more than an arms-length transaction in which Anabi arrived at the offered price without any collusion with Equilon and, by virtue of its own due diligence, did not include any price manipulation …." Pls.' Mtn. at 5. Plaintiffs further argue that "as long as Anabi is asserting that it did not manipulate the price for each of the subject properties, that it did not collude with Equilon in coming up with the offered prices, and that Equilon may not

---

[3] Moreover, Section 1060 must be read together with California Code of Civil Procedure § 1061, which states: "The court may refuse to [grant declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634, 647 (2009) (citing Section 1061).

sell the properties to Plaintiffs at a price other than the price contained in the Third Party Offer, an actual controversy exists between Plaintiffs and Anabi." Id. at 9-10.

In response, Equilon argues that there is no possibility that Plaintiffs will be able to establish a declaratory relief claim against Anabi because no actual controversy exists between Plaintiffs and Anabi.  The Court agrees.  In particular, Plaintiffs have alleged no contractual relationship with Anabi concerning the sale of the stations they operate nor have they alleged any statutory violation on the part of Anabi.  Instead, this lawsuit is solely based on Plaintiffs' claim that the ROFRs made to Plaintiffs by Equilon to sell the subject premises to Plaintiffs contain improper terms and prices in excess of fair market value.  See, e.g., Compl. at ¶¶ 19, 22, 23, 25, 33, 37.  Thus, the only "actual" or "justiciable controversy" between parties having adverse legal interests is between Plaintiffs and Equilon.

Specifically, Plaintiffs' declaratory relief claim is premised on a dispute between Plaintiffs and Equilon, based on Equilon's alleged violation of Section 20999, et seq., i.e., its failure to provide a bona fide ROFR as required by that statute.  Compl. ¶ 41.  Indeed, Plaintiffs' entire Complaint – including Claims One, Two, and Three – is based on the premise that Equilon's ROFRs violate Section 20999, et seq.  By contrast, the Complaint is devoid of any facts or allegations that Anabi violated any statute or otherwise engaged in any wrongdoing.  While Plaintiffs argue in their motion for remand that Anabi "colluded" with Equilon to engage in "price manipulation," these allegations are not in the Complaint and do not form the basis of Plaintiffs' declaratory relief claim against Anabi.

Moreover, Section 20999, et seq., which forms the basis of each of Plaintiffs' claims, is applicable to petroleum franchisees and franchisors, and can only be violated by a franchisor. See Cal. Bus. & Prof. Code § 20999(c) ("'Franchisor' means a refiner or distributor who authorizes or permits, under a franchise, a retailer or distributor to use a trademark in connection with the sale, consignment, or distribution of fuel."); § 20999.25(a) ("the franchisor shall not sell, transfer, or assign to another person the franchisor's interest in the premises…."). Here, Plaintiffs fail to allege that any franchisee/franchisor relationship ever existed between Anabi and Plaintiffs with respect to the subject gasoline stations.  Rather, Anabi is a potential

1 third-party purchaser of the subject properties.  Therefore, under Plaintiffs' allegations, Anabi
2 cannot be found liable under Section 20999, et seq.  It follows that Plaintiffs cannot obtain
3 injunctive relief as against Anabi under Section 20999.3, as set forth in their declaratory relief
4 claim, because Section 20999.3 provides for temporary and permanent injunctive relief for
5 violations of Section 20999, et seq.
6     At bottom, Equilon has met its burden of proving, by clear and convincing evidence,
7 that Anabi was fraudulently joined, as it has shown that there is no possibility under the facts
8 alleged that Plaintiffs will be able to establish a claim for declaratory relief against Anabi.
9     **B.**    **MOTION FOR ATTORNEYS' FEES AND COSTS**
10     Title 28, United States Code, section § 1447(c), authorizes the Court to "require
11 payment of just costs and any actual expenses, including attorney fees, incurred as a result of
12 the removal."  An award of fees and expenses is appropriate where a defendant's removal
13 petition lacks any reasonable basis in law or fact.  See Martin v. Franklin Capital Corp., 546
14 U.S. 132, 141 (2005).  Here, the Court declines to award fees and costs to Plaintiffs, as the
15 Court has determined that removal was proper.
16 **V.**    **CONCLUSION**
17     For the reasons set forth above,
18     IT IS HEREBY ORDERED THAT:
19     1.    Plaintiffs' Motion to Remand Action and Motion for Attorneys' Fees and Costs
20 are DENIED.
21     2.    A telephonic case management conference is scheduled in this matter for **July 7,**
22 **2011 at 2:30 p.m.**  The parties shall meet and confer prior to the conference and shall prepare a
23 joint Case Management Conference Statement which shall be filed no later than ten (10) days
24 prior to the Case Management Conference that complies with the Standing Order for All
25 Judges of the Northern District of California and the Standing Order of this Court.  Plaintiffs
26 shall be responsible for filing the statement as well as for arranging the conference call.  All
27 parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.
28     3.    This Order terminates Docket 26.


IT IS SO ORDERED.

Dated: March 31, 2011

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

IT IS SO ORDERED.

Dated: March 31, 2011

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge