UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BSD, INC., a California corporation; 21st CENTURY GROUP, INC., a California corporation; and YOUSTINE, INC., a California corporation,, <br><br> Plaintiffs, <br><br> vs. <br><br> EQUILON ENTERPRISES, LLC, a Delaware limited liability company, ANABI OIL CORPORATION, a California corporation, and DOES 1 through 100, Inclusive, <br><br> Defendants. | Case No:  C 10-05223 SBA <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br> Docket 96 |

AND RELATED COUNTERCLAIMS.

Plaintiffs BSD, Inc., 21st Century Group, Inc., and Youstine, Inc. ("Youstine") commenced the instant action against, among others, Equilon Enterprises, LLC ("Equilon") in the Superior Court of the State of California, County of Sonoma.  Compl., Dkt. 1.  The case was removed to this Court by Equilon on the basis of diversity jurisdiction.  See Notice of Removal, Dkt. 1.  On October 17, 2011, Equilon filed an amended counterclaim against Youstine alleging claims for breach of contract, conversion, and declaratory relief.  Dkt. 67.  The parties are presently before the Court on Equilon's motion for partial summary judgment on its counterclaims for breach of contract and declaratory relief under Rule 56 of the Federal Rules of Civil Procedure.  Dkt. 96.  Youstine opposes the motion.  Dkt. 104.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby GRANTS IN PART AND DENIES IN PART

1    Equilon's motion for partial summary judgment, for the reasons stated below.  The Court, in

2    its discretion, finds this matter suitable for resolution without oral argument.  <u>See</u>

3    Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

4    **I.       <u>BACKGROUND</u>**

5            At the time the instant action was commenced, Youstine was a franchisee operating

6    a Shell-branded gasoline service station in California.  <u>See</u> Compl. ¶¶ 3, 16.  Equilon was

7    the franchisor and owner of the gasoline service station leased by Youstine.  <u>Id.</u> ¶ 8.

8    Equilon is wholly-owned by Shell Oil Products US, and does business under the name

9    "Shell Oil Products US."  <u>See</u> Dkt. 41.

10           From June 1, 2007 to June 17, 2011, Youstine operated a Shell-branded gasoline

11   service station located at 2600 Pellissier Place, City of Industry, California 90601 ("the

12   Station") pursuant to a Retail Facility Lease ("Lease") and a Retail Sales Agreement

13   ("RSA") (collectively, "the Franchise Agreements").  Equilon's Notice of Lodgment of

14   Exhibits ("NOL"), Exhs. 1-2, Dkt. 97.  Under the terms of the Lease, Youstine agreed to

15   pay Equilon monthly rent on the first day of each month in exchange for possession and use

16   of the Station.  NOL, Exh. 1; Styslinger Decl. ¶ 3.  Under the terms of the RSA, Youstine

17   agreed to pay Equilon for products it purchased from Equilon, including gasoline.  NOL,

18   Exh. 2; Styslinger Decl. ¶ 3.

19           The Franchise Agreements have an effective date of June 1, 2007, and a three-year

20   term, which was originally set to expire on May 31, 2010.  NOL, Exhs. 1-2.  On or about

21   March 3, 2010, the Franchise Agreements were extended through April 30, 2011.  NOL,

22   Exh. 3.  On July 7, 2010, Anabi Oil Corporation ("Anabi") closed on its purchase of certain

23   retail assets of Equilon in southern and northern California.  Styslinger Decl. ¶ 4.  The

24   Station was one of the properties in southern California that Anabi offered to purchase.  <u>Id.</u>

25   However, because Youstine operated the Station and leased the site from Equilon, Youstine

26   was entitled to receive a statutory Right of First Refusal offer ("ROFR") under California

27   Business & Professions Code § 20999.25.  <u>Id.</u>  As such, the Station was not included in the

28   July 7th closing.  <u>Id.</u>  But, due to a mistake, the Station was terminated from Equilon's

contract system and treated as though it had been transferred to Anabi.  Id. ¶ 5.  As a consequence, beginning in July 2010, Youstine's monthly rent was not electronically drafted by Equilon or anyone else.  Id. ¶ 6.

In a letter dated July 9, 2010, Equilon informed Youstine that it had assigned its interest in the Franchise Agreements to Anabi effective July 7, 2010.  Styslinger Decl. ¶ 6; NOL, Exh. 16.  The letter also notified Youstine that Anabi, not Equilon, would be drafting Youstine's monthly rent for July and August 2010, and that all future payments should be sent to Anabi.  Id.

In August 2010, Equilon accepted Anabi's offer to purchase the Station. McCammish Decl. ¶ 5.  On August 18, 2010, a ROFR for the Station was sent to Youstine. Id. ¶ 6.  In September 2010, Youstine accepted the ROFR under protest, and sent Equilon a check in the amount of $42,500 representing its earnest deposit payment pursuant to the terms of the ROFR.  Id. ¶ 7; NOL, Exh. 9.  In a letter dated September 27, 2010, Youstine's counsel informed Equilon that "[a]lthough my client intends to purchase the premises in accordance with Equilon's [ROFR] Offer rather than risk losing the right to purchase the premises, my client will and hereby does so under protest and reservation of any and all legal rights my client may have under all applicable state and federal laws. . . ."  NOL, Exh. 9.

On November 2, 2010, Youstine, BSD, Inc., and 21st Century Group, Inc. (collectively, "Plaintiffs") filed the instant action against Equilon and Anabi alleging three claims: (1) violation of California Business & Professions Code § 20999 et seq.; (2) violation of California Business & Professions Code § 17200 et seq. (the "UCL"); and (3) declaratory relief.  See id.  Specifically, Plaintiffs first claim asserts that Equilon violated California Business & Professions Code § 20999 et seq. by failing to provide a "bona fide" ROFR.  Id. ¶¶ 14-22.  Plaintiffs' second claim alleges that Equilon engaged in "unfair and/or fraudulent business practices" by violating § 20999 et seq.  Id. ¶¶ 29-39.  Finally, Plaintiffs' third claim seeks a declaration regarding "[w]hether Equilon should be enjoined from selling the subject premises and whether Anabi should be enjoined from purchasing

the subject premises pursuant to California Business and Professions Code § 20999.3 until the conclusion of this action."  Id.

In January 2011, Equilon received a renewal notice from the State of California for a commercial rental license, which covered the northern California stations operated by lessee-dealers who had received ROFRs from Equilon to purchase their respective stations. Styslinger Decl. ¶ 7.  Because these lessee-dealer ROFR sites had been removed from Equilon's contract system in July 2010, Equilon believed the renewal notice was in error and contacted Anabi so that it could handle the license renewal.  Id.  Anabi, however, informed Equilon that the leases were never actually transferred by Equilon.  Id.  At that point, Equilon realized that two lessee-dealers in northern California who had received ROFRs from Equilon in connection with Anabi's offers to purchase the stations had not had their monthly rent drafted since July 2010.  Styslinger Decl. ¶ 7.  In light of this discovery, Equilon decided to review its records in early February 2011 to determine whether any of the other ROFR sites were also affected.  Id.  During this review, Equilon determined that Youstine had not paid its monthly rent since July 2010.  Id. ¶¶ 6-7.  Instead, Youstine continued to operate the Station and use products provided by Equilon without making rent payments or notifying Equilon of the discrepancy.  Id.

In a letter dated February 11, 2011, Equilon informed Youstine that it had failed to pay rent since July 2010, that the amount due under the terms of the Lease for July 2010 through February 2011 is $115,656, and that Equilon would be drafting Youstine's account for the full amount on or about February 15, 2011.  NOL, Exh. 5.  The letter also informed Youstine that "[p]ayment of this past rent shall also be a condition to closing under that certain [ROFR] dated August 18, 2010."  Id.

On February 16, 2011, Equilon attempted to electronically draft $137,962.86 from Youstine's account, which included the past-due rent for July 2010 through February 2011 and one unpaid fuel invoice in the amount of $22,306.86 that was "lifted" on February 14, 2011.  Schaeffer Decl. ¶ 3.  On or about February 18, 2011, the draft was returned by Youstine's financial institution due to insufficient funds.  Id.  On February 23, 2011,

Equilon attempted to electronically draft Youstine's account in the amount of $26,092.79, which included one fuel invoice that was "lifted" on February 20, 2011.  Id.  On February 25, 2011, the draft for $26,092.79 was returned by Youstine's financial institution due to insufficient funds.  Id.

On or about February 22, 2011, Equilon sent Youstine a letter titled "Final Demand for Payment," which states that Youstine has until March 3, 2011 to avoid termination of the franchise relationship by paying Equilon the entire balance due and owing.  NOL, Exh. 6.  The letter also states that termination would be in accordance with the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. ("PMPA"), which allows for termination of a franchise relationship due to "(1) failure by the franchisee to pay the franchisor in a timely manner when due all sums to which the franchisor is legally entitled, (2) failure by the franchisee to exert good faith efforts to comply with the terms of the franchise, and (3) failure to comply with the terms of the franchise agreements."  Id.  Further, the letter states that the terms of the Franchise Agreements provide that the "failure to pay Equilon in a timely manner when due all sums to which Equilon is legally entitled constitutes grounds for termination" of the agreements.  Id.[1]  Youstine did not pay off its outstanding balance by March 3, 2011.  Schaeffer Decl. ¶ 4.  In fact, Youstine failed to pay Equilon monthly rent for March and April 2011, adding $28,914 to Youstine's past due balance.  Id.

On April 22, 2011, Equilon informed Youstine that it was extending the Franchise Agreements through April 30, 2012.  NOL, Exh. 4.  The letter, however, states that:

> It is intended that this extension shall have no effect upon any pending litigation between Retailer and Shell, and is therefore Subject to our agreement that this extension shall be without prejudice to our respective legal positions as they would have existed had the effective date of expiration not been extended.  Further, nothing herein shall be construed as a representation or commitment that the Agreements (a) will not be terminated prior to the end of the Extension Period, including without limitation, a

---

[1] Youstine was placed on C.O.D. (i.e., cash on delivery) status in February 2011 due to its debt.  Schaeffer Decl. ¶ 6.  Thus, in order to purchase products from Equilon, Youstine was required to pre-pay.  Id.  Beginning in March 2011, Youstine was charged $38,000 for each load of gasoline on a C.O.D. basis.  Id.  Any difference between the actual cost of the gasoline load and the $38,000 was applied to Youstine's outstanding account balance.  Id.

termination for failure to pay Shell when due all amounts owed to Shell: or (b) will be renewed at the end of Extension Period.

Id.

On or about April 28, 2011, Equilon sent Youstine a letter titled, "Notice of Termination - Failure to Pay," which notified Youstine that "Equilon intends to terminate the Lease and the RSA . . . effective July 31, 2011" based on Youstine's "continuing failure to pay Equilon in a timely manner when due all sums to which Equilon is legally entitled, for which termination of the franchise is permitted under the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. §§ 2802(b)(2)(C) and 2802(c)(8)," as well as "Articles 18(a)(3)(vii) and 23 (a)(3)(vii) of the Lease. . . ." NOL, Exh. 7. The letter also states that four drafts of Youstine's account had been returned unpaid by Youstine's financial institution due to insufficient funds since Equilon's February 22, 2011 "Final Demand for Payment" letter, and that Youstine's past due balance is $169,218.65. Id. The letter further states that, despite repeatedly promises that payment would be made against the past due balance, including a promise to pay $50,000 on April 22, 2011 and a promise that a payment would be made on April 26, 2011, "[n]o payment toward the past due balance has been received." Id. The letter goes on to state:

> Despite two written notices and numerous opportunities to exert good faith efforts to cure, [Youstine] remains in continuing breach of [Youstine's] obligation to pay rent in a timely manner as required by Article 4 of the Lease. Therefore, in addition to the foregoing grounds, termination of the Franchise Agreements and the franchise relationship thereunder is also justified based upon (a) [Youstine's] failure to comply with the terms of the Franchise Agreements, for which termination is permitted pursuant to PMPA Section 2802(b)(2)(A); and (b) [Youstine's] failure to exert good faith efforts to carry out the provisions of the franchise, for which termination is permitted pursuant to PMPA Section 2802(b)(2)(B).

> Equilon gave [Youstine] a right of first refusal offer ("ROFR") to purchase the Premises under California Business and Professions Code Section 20999.25, which [Youstine] timely accepted. Section 4(a) of the ROFR provides that Equilon may terminate the ROFR if Equilon has issued a notice of termination of the Franchise Agreements in accordance with the PMPA. Therefore, in accordance with the terms and conditions of the ROFR, this letter shall serve as written notice to [Youstine] that Equilon elects to terminate the ROFR effective immediately.

While Youstine paid its monthly rent for May 2011, a check in the amount of $28,914 sent to Equilon in mid-May was returned by Youstine's financial institution due to insufficient funds.  Schaeffer Decl. ¶ 5.  On June 9, 2011, Equilon sent Youstine a letter titled "Supplemental Notice of Termination - Failure to Pay," notifying Youstine that it was terminating the Franchise Agreements effective June 30, 2011 rather than July 31, 2011 as previously stated.  NOL, Exh. 8.  In this letter, Equilon states that since the April 28, 2011 Notice of Termination, Youstine's check in the amount of $28,914 for March and April 2011 rent was returned for "Non-Sufficient Funds."  Id.  The letter also states that Youstine's continued inability to pay rent in a timely manner subjects Equilon to increased exposure for additional lost rent, and therefore termination on less than 90 days notice is reasonable.  Id.  The letter advises Youstine that Equilon is terminating the Franchise Agreements for the same reasons as set forth in its April 28, 2011 Notice of Termination, including Youstine's failure to timely pay Equilon all sums to which it is legally entitled.  Id.

On June 17, 2011, Youstine surrendered the station back to Equilon.  Youstine's Answer to Equilon's Am. Counterclaim ¶ 23, Dkt. 64.  Youstine, however, failed to pay its account balance.  Equilon's Mtn. at 9.  As of June 17, 2011, Youstine's outstanding account balance is $167,774.33.  Schaeffer Decl. ¶ 7.

## II.   DISCUSSION

### A.   Legal Standard

"A party may move for summary judgment, identifying each claim  . . . or the part of each claim . . . on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  A material fact is one that could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party.  Id.

The moving party's burden on summary judgment depends on whether it bears the burden of proof at trial with respect to the claim or defense at issue.  When, as here, the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000).  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.  Id.  Once the moving party has met its burden, the burden shifts to the nonmoving party to designate specific facts showing a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Anderson, 477 U.S. at 256 ("a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").  A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A).

To carry its burden, the nonmoving party must show more than the mere existence of a scintilla of evidence, Anderson, 477 U.S. at 252, and "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In fact, the nonmoving party must come forward with affirmative evidence from which a jury could reasonably render a verdict in the nonmoving party's favor.  Anderson, 477 U.S. at 252, 257.  In determining whether a jury could reasonably render a verdict in the nonmoving party's favor, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor.  Id. at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Dias v. Nationwide Life Ins. Co., 700 F.Supp.2d 1204, 1214

(E.D. Cal. 2010).  To establish a genuine dispute of material fact, a Plaintiff must present affirmative evidence; bald assertions that genuine issues of material fact exist are insufficient.  Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); see also F.T.C. v. Stefanchik, 559 F.3d 924 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment.").  Further, evidence that is merely colorable or that is not significantly probative, is not sufficient to withstand a motion for summary judgment.  Anderson, 477 U.S. at 249-250 (citations omitted).

It is not the court's task "to scour the record in search of a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996).  Counsel have an obligation to lay out their support clearly.  Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found."  Id.  The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense.  Id.

## B.   Equilon's Motion for Partial Summary Judgment

Equilon moves for summary judgment on its first counterclaim for breach of contract and its third counterclaim for declaratory relief against Youstine.  Equilon's counterclaims are discussed below.

### 1.   Equilon's Evidentiary Objections

Equilon's reply memorandum contains numerous evidentiary objections.  Equilon, without providing reasoned legal analysis, objects to certain evidence cited by Youstine on the ground that such evidence is irrelevant, lacks foundation, and/or has not been properly authenticated.  See Equilon's Reply at 14-15.  The Court declines to rule on Equilon's conclusory objections because even when the objected to evidence is considered, Equilon is

1   still entitled to summary judgment.[2]  See Smith v. County of Humboldt, 240 F.Supp.2d

2   1109, 1115-1116 (N.D. Cal. 2003) (Illston, J.) (refusing to rule on the evidentiary

3   objections in defendant's reply because "even if the evidence submitted by plaintiff is

4   considered by this Court, plaintiff fails to state a colorable claim").

5                       **2.    Breach of Contract Claim**

6        The standard elements of a claim for breach of contract are: (1) the contract; (2)

7   plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4)

8   damage to plaintiff therefrom.  Abdelhamid v. Fire Ins. Exchange, 182 Cal.App.4th 990,

9   999 (2010).  Equilon contends that summary judgment is appropriate with respect to its

10  breach of contract counterclaim because the parties entered into valid contracts, i.e., the

11  Franchise Agreements (NOL, Exhs. 1-2), it has performed all of its obligations under the

12  terms of the agreements, and Youstine has breached the terms of the agreements by failing

13  to pay Equilon money due and owing thereunder in the amount of $167,774.33.  Equilon's

14  Mtn. at 10-11.  In support of its assertion that Youstine's outstanding account balance is

15  $167,774.33, Equilon has submitted the declaration of Robert Schaeffer as well as a

16  spreadsheet providing data regarding Youstine's account.  Schaeffer Decl. ¶¶ 1-7; NOL,

17  Exh. 15.

18       In his declaration, Schaeffer attests that, as a Credit Specialist in Equilon's Credit

19  Group, he is involved in collection activity for Equilon's branded fuel accounts, including

20  retailer accounts such as Youstine's.  Schaeffer Decl. ¶ 2.  According to Schaeffer, as of

21  June 17, 2011, "the amount of $167,774.33 remains due and owing on Youstine's account."

22  Id. ¶ 7.  Schaeffer attests that a true and correct copy of a spreadsheet reflecting the charges

23  and credits to Youstine's dealer account is attached to Equilon's NOL as Exhibit 15.  Id.;

24  see NOL, Exh. 15.  Schaeffer states that the difference between the balance reflected on the

25  spreadsheet, $174,039.03, and the amount that remains due and owing, $167,774.33, is

26  ────────────────
27          [2] While the Court finds that Equilon is not entitled to summary judgment on one
    aspect of its declaratory relief claim, this determination is based on Equilon's failure to
    meet its burden under Rule 56, not on Youstine's designation of facts creating a genuine
28  dispute of material fact for trial.

1   caused by the fact that the spreadsheet contains the full amount of unpaid June 2011 rent.

2   Schaeffer ¶ 7.  After the total rent amount is pro-rated to cover only the 17 days that

3   Youstine occupied the Station, Youstine's outstanding account balance is reduced to

4   $167,774.33.  Id.

5        In response, Youstine does not assert that a genuine dispute of material fact exists as

6   to the first three elements of Equilon's breach of contract counterclaim.  Therefore, for

7   purposes of the instant motion, the Court considers it undisputed that the parties entered

8   into valid contracts (i.e., Franchise Agreements), Equilon performed as required under the

9   agreements, and Youstine breached the terms of the agreements.  See Fed.R.Civ.P. 56(e) (if

10  a party fails to properly address another party's assertion of fact, the court may consider the

11  fact undisputed for purposes of the motion).  In fact, Youstine admits that Equilon and

12  Youstine are parties to the Franchise Agreements and that Youstine is obligated under the

13  terms of these agreements to pay Equilon monthly rent and for products such as gasoline.

14  Youstine's Answer to Equilon's Am. Counterclaim ¶¶ 10-12, 14, Dkt. 64.  Further, Youstine

15  admits that it has breached the terms of the Franchise Agreements by failing to pay

16  amounts owing thereunder.  Youstine's Opp. at 7; see also Youstine's Answer to Equilon's

17  Am. Counterclaim ¶ 33.  According to Youstine, "[i]t is undisputed that Youstine owes

18  some debt to Equilon.  The amount of that debt, however, is in dispute here."  Youstine's

19  Opp. at 7.

20       Specifically, Youstine contends that summary judgment is inappropriate because: (1)

21  there is evidence before the Court that "calls into question" the accuracy of Equilon's claim

22  that it is entitled to damages in the amount of $167,774.33; (2) it has presented evidence

23  establishing that Equilon has not credited Youstine's account for the ROFR deposit in the

24  amount of $42,500; and (3) Equilon failed to credit Youstine's account for certain credit

25  card sales in 2010 totaling $18,102.76.  Youstine's Opp. at 6, 8-11.  Youstine's arguments

26  are discussed below.

27  ///

28  ///

### a.      Evidence Regarding Total Amount Owed

In support of its argument that there is evidence before the Court that "calls into question" Equilon's claim for damages in the amount of $167,774.33, Youstine points to three letters it received from Equilon in February and March 2011.  Youstine's Opp. at 8.  According to Youstine, because these letters fail to explain the increases in its account balance that occurred from February 11, 2011 to March 11, 2011, the unexplained increases call into question Equilon's accounting of the entire debt owed.  Id.  Specifically, Youstine claims that Equilon failed to explain how it reached a total balance due of $137,963.86[3] on February 21, 2011, which represents a $22,307.86[4] increase from Equilon's February 11, 2011 letter stating that Youstine owes $115,656 for past due rent.  Id.  In addition, Youstine claims that Equilon failed to explain how it reached a total past due balance of $162,741.39 in its March 11, 2011 letter,[5] which represents a $24,778[6] balance increase from February 21, 2011.  Id.

The Court finds that Youstine has failed to sustain its burden to demonstrate that a genuine dispute exists for trial.  Youstine has not shown that there is evidence before the Court that "calls into question" Equilon's claim for damages in the amount of $167,774.33.  Youstine has not cited affirmative evidence in the record from which a jury could find in its favor.  See F.T.C., 559 F.3d at 929 ("In order to avoid summary judgment, a non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor.").  Indeed, as pointed out by Equilon, the evidence in the record demonstrates that Equilon provided Youstine with detailed account statements reflecting

---

[3] This figure appears to be a typographical error.  The evidence cited by Youstine states that the total balance requested by Equilon on February 21, 2011 was $137,962.86, not $137,963.86.  Bleau Decl., Exh. 5.

[4] The actual account balance increase from February 11, 2011 to February 21, 2011 was $22,306.86, not $22,307.86.

[5] This letter is dated March 17, 2011, not March 11, 2011.  Bleau Decl., Exh. 6.

[6] The actual account balance increase from February 21, 2011 to March 17, 2011 was $24,778.50, not $24,778 (calculated as $162,741.39 minus $137,962.86).

Youstine's total past due account balance as well as specific charges and credits from which the total balance was derived, including statements covering the period of time Youstine claims that Equilon failed to explain the account balance increases.  See Bleau Decl., Exhs. 9, 11.  Given that Youstine submitted two of these statements as evidence in support of its opposition covering the period in question, Youstine is hard-pressed to argue that Equilon failed to adequately explain the account balance increases.  See id.

A review of the statements reveals that Equilon provided Youstine an accounting of how it reached the balance increases reflected in the letters dated February 21, 2011 and March 17, 2011.  See Bleau Decl., Exhs. 9, 11.  Specifically, Equilon provided Youstine account statements indicating that Youstine's account was charged $22,306.86 for product invoice on February 14, 2011, and was charged $26,092.79 for product invoice on February 20, 2011.  See id.  In addition to the other entries on the account statements, these charges explain the balance increases that Youstine claims "calls into question Equilon's accounting of the entire debt owed."  Id.  Youstine, for its part, does not challenge the accuracy of any of the entries on the account statements it received from Equilon that cover the period February 11, 2011 to March 17, 2011.  Nor has Youstine presented affirmative evidence showing that Equilon erred in calculating the amount owed by Youstine.  Accordingly, Youstine has not sustained its burden to show that a genuine dispute of material fact exists for trial.  See F.T.C., 559 F.3d at 929, n. 10 (a party opposing a properly supported motion for summary judgment must produce significant probative evidence that demonstrates that there is a genuine issue of material fact for trial).

### b.    ROFR Deposit

Next, Youstine contends that a genuine dispute of material facts exists on the issue of damages because Equilon's damages calculation fails to take into account Youstine's $42,500 ROFR deposit.  Youstine's Opp. at 11.  In response, Equilon claims that because it does not possess Youstine's ROFR deposit, there is no basis to offset such amount against Youstine's outstanding account balance.  Equilon's Reply at 3.  The evidence submitted by Equilon shows that Youstine made its ROFR deposit check payable to First American Title

1    Insurance Company, not Equilon.  See NOL, Exh. 9.  According to Equilon, Youstine's

2    ROFR deposit remains in escrow with First American Title Insurance Company because

3    the escrow for the sale of the Station remains open due to the pendency of this lawsuit.  See

4    McCamish Decl. ¶ 8.  Youstine, for its part, has not cited any affirmative evidence showing

5    that Equilon has improperly retained Youstine's ROFR deposit without applying this

6    amount towards Youstine's outstanding account balance.  Accordingly, Youstine has failed

7    to sustain its burden to demonstrate that a genuine dispute of material fact exists.  See

8    F.T.C., 559 F.3d at 929 ("In order to avoid summary judgment, a non-movant must show a

9    genuine issue of material fact by presenting *affirmative evidence* from which a jury could

10   find in his favor.") (emphasis in original).[7]

11                                    **c.      Credit Card Transactions**

12          Finally, Youstine contends that a genuine dispute of material fact exists on the issue

13   of damages because Equilon failed to credit Youstine's account in the amount of

14   $18,102.76 for certain credit card sales in 2010.  Youstine's Opp. at 11.  In support of its

15   position, Youstine directs the Court to portions of three depositions and to four exhibits

16   without any explanation or analysis of how this evidence demonstrates that Equilon failed

17   to credit Youstine's account in the amount of $18,102.76.  Id.  According to Youstine,

18   Equilon failed to credit its account for credit card sales on four dates in 2010: (1) May 23,

19   2010 - $3,445.17; (2) August 23, 2010 - $6,885.78; (3) October 10, 2010 - $6,771.81; and

20   (4) November 12, 2010 - $1,000.  Bleau Decl., Exh. 12.

21          The Court finds that the evidence submitted by Youstine is insufficient to create a

22   genuine dispute of material fact on the issue of damages.  Indeed, Youstine's less than one-

23   page conclusory argument in this regard fails to establish that a genuine dispute of material

24   fact exists for trial.  None of the evidence cited by Youstine shows that Equilon erred in

25   calculating the amount owed by Youstine under the Franchise Agreements.

26

27          [7] The parties agree that if the escrow deposit is released to Equilon, the amount
     should be applied to Youstine's past due account balance.  Youstine's Opp. at 10-11;
28   Equilon's Reply at 3.

In support of its position, Youstine cites several e-mails and deposition testimony, which merely indicates that Youstine claims it is owed money for certain unreimbursed credit card sales in 2010. <u>See</u> Bleau Decl., Exhs. 7, 10, 12; Abdou Dep. at 227:20-25, 229:2-236:25, 306:1-20; Driscoll Dep. at 59:24-60:3, 83:25-85-6; Barents Dep. at 36:24-37:21. The only evidence Youstine cites to substantiate its claim is a 24-page spreadsheet. Bleau Decl., Exh. 8. Youstine, however, failed to direct the court to specific portions of the spreadsheet that support its position. <u>See</u> <u>Southern Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003) (the party opposing summary judgment must direct the court's attention to specific, triable facts, general references without page or line numbers are not sufficiently specific); <u>see</u> <u>also</u> <u>Forsberg v. Pac. Northwest Bell Tel. Co.</u>, 840 F.2d 1409, 1418 (9th Cir. 1988) (courts are not required to comb the record to find some reason to deny a motion for summary judgment). Moreover, a review of the spreadsheet does not reveal on its face that Equilon failed to credit Youstine for credit card sales on the dates and in the amounts identified by Youstine. Nor has Youstine explained how the entries on the spreadsheet support its position or how the evidence it cites is sufficient to defeat Equilon's motion for summary judgment.

In short, even viewing the evidence cited by Youstine in the light most favorable to Youstine and drawing all inferences in Youstine's favor, the evidence is insufficient to withstand Equilon's motion for summary judgment. In order to avoid summary judgment, a non-movant must show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor. <u>F.T.C.</u>, 559 F.3d at 929. A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment. <u>Id.</u> Other than a general reference to a conclusory document, Youstine did not offer any evidence substantiating its claim that Equilon failed to credit Youstine's account in the amount of $18,102.76 "for credit card sales for four separate days in 2010." Youstine, for instance, has not submitted any credit card receipts showing the total amount of credit card sales on the days in question or any bank account statements showing that Equilon failed to reimburse Youstine for those sales.

1

### d.    Conclusion

2       The Court concludes that Equilon has sustained its burden as the moving party to

3 come forward with evidence which would entitle it to a directed verdict if the evidence

4 went uncontroverted at trial on its breach of contract claim, and that Youstine has failed to

5 demonstrate that a genuine dispute of material fact exists with respect to this claim.

6 Accordingly, Equilon's motion for summary judgment as to its counterclaim for breach of

7 contract against Youstine is GRANTED.

8         **3.    Declaratory Relief Claim**

9       Equilon's third counterclaim seeks a declaration that the notices of termination

10 concerning the franchise and Youstine's ROFR are "appropriate" and in accordance with §

11 2802 and § 2804 of the PMPA. Equilon's Am. Counterclaim ¶ 43. The Declaratory

12 Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any

13 court of the United States . . . may declare the rights and other legal relations of any

14 interested party seeking such declaration, whether or not further relief is or could be

15 sought." 28 U.S.C. § 2201(a). "Basically, the question in each case is whether the facts

16 alleged . . . show that there is a substantial controversy, between parties having adverse

17 legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

18 judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

19         **a.    PMPA**

20       The PMPA governs when an oil company may terminate its franchise relationships.

21 See 15 U.S.C. §§ 2801-2806. The PMPA is intended to protect gas station franchise

22 owners from arbitrary termination or nonrenewal of their franchises with large oil

23 corporations and gasoline distributors, and to remedy the disparity in bargaining power

24 between parties to gasoline franchise contracts. BP West Coast Products LLC v. May, 447

25 F.3d 658, 662 (9th Cir. 2006). The PMPA establishes minimum federal standards

26 governing the termination and nonrenewal of franchise relationships for the sale of motor

27 fuel by the franchiser or supplier of such fuel. Id.; see also Clinkscales v. Chevron U.S.A.,

28 Inc., 831 F.2d 1565, 1566 (11th Cir. 1987). The Act reflects Congress' concern with

"protecting franchisees, who generally have inferior bargaining power when dealing with franchisors, from unfair termination or nonrenewal of their franchises." Carter v. Exxon Co., U.S.A., 177 F.3d 197, 201 (3d Cir. 1999); see Pro Sales, Inc. v. Texaco, U.S.A., 792 F.2d 1394, 1399 (9th Cir. 1986).  In order to prevent unlawful terminations or non-renewal of franchise agreements, the PMPA "impos[es] two requirements on franchisors.  First, the franchisor may terminate a franchise only for certain statutorily prescribed grounds.  Second, the franchisee must be given adequate notice of the franchisor's intent to terminate the franchise." Sun Refining & Mktg. Co. v. Rago, 741 F.2d 670, 672 (3d Cir. 1984).

The PMPA prohibits a service station franchisor from terminating an existing franchise relationship unless one of the conditions set forth in 15 U.S.C. § 2802(b) has been satisfied.  BP West Coast Products, 447 F.3d at 662-663.  Under the PMPA, a franchise may be terminated if the franchisee fails "to comply with any provision of the franchise, which provision is both reasonable and of material significance to the franchise relationship, if the franchisor first acquired actual or constructive knowledge of such failure[:] (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or (ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title."  15 U.S.C. § 2802(b)(2)(A).

A franchise may also be terminated upon "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable, if such event occurs during the period the franchise is in effect and the franchisor first acquired actual or constructive knowledge of such occurrence[:] (i) not more than 120 days prior to the date on which notification of termination or nonrenewal is given, if notification is given pursuant to section 2804(a) of this title; or (ii) not more than 60 days prior to the date on which notification of termination or nonrenewal is given, if less than 90 days notification is given pursuant to section 2804(b)(1) of this title."  15 U.S.C. § 2802(b)(2)(C).

Section 2802(c) sets forth a nonexhaustive list of "occurrences" which qualify as "events relevant to the franchise" upon which termination is "reasonable" under section 2802(b)(2)(C), including the "failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled." 15 U.S.C. § 2802(c)(8). Should an event listed in 2802(c) occur, the franchise may be terminated without further inquiry into whether the violation is serious enough to warrant termination. Atlantic Richfield Co. v. Guerami, 820 F.2d 280, 283 (9th Cir. 1987).

The franchisee bears the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship. BP West Coast Products, 447 F.3d at 663 n. 1. The franchisor then bears the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted under section 2802(b) or 2803. Id.

### b. Termination of the Franchise Agreements

### i. Termination Under § 2802

Equilon contends that termination of the franchise relationship was justified under § 2802 of the PMPA because "[w]here, as here, a petroleum franchisee fails or refuses to make timely payment of sums owed to the franchisor, the PMPA recognizes this as a ground for termination of the franchise relationship on two separate, alternative bases: (1) as the occurrence of a 'relevant' event that justifies termination of the franchise relationship (15 U.S.C. § 2802(b)(2)(C)); and (2) as a failure to comply with a reasonable and materially significant provision of the franchise agreement (15 U.S.C. § 2802(b)(2)(A).)" Equilon's Mtn. at 12.

As previously indicated, it is undisputed that Youstine failed to timely pay Equilon all sums to which Equilon is legally entitled under the terms of the Franchise Agreements. It is also undisputed that Equilon sent Youstine a Notice of Termination on April 28, 2011, which informed Youstine that it intends on terminating the Franchise Agreements effective July 31, 2011 based on Youstine's "continuing failure to pay Equilon in a timely manner when due all sums to which Equilon is legally entitled, for which termination of the

1   franchise is permitted under . . . §§ 2802(b)(2)(C) and 2802(c)(8)."  NOL, Exh. 7.  This

2   letter also states that "[d]espite two written notices and numerous opportunities to exert

3   good faith efforts to cure, [Youstine] remains in continuing breach of [its] obligation to pay

4   rent in a timely manner as required by Article 4 of the Lease.  Therefore, . . . termination of

5   the Franchise Agreements and the franchise relationship thereunder is also justified based

6   upon (a) Youstine's failure to comply with the terms of the Franchise Agreements, for

7   which termination is permitted pursuant to PMPA Section 2802(b)(2)(A). . . ."  Id.

8        Additionally, it is undisputed that Equilon sent Youstine a Supplemental Notice of

9   Termination on June 9, 2011, which informed Youstine that the purpose of the

10  supplemental notice is to advise Youstine that it intends on terminating the Franchise

11  Agreements effective June 30, 2011 rather than July 31, 2011 based on Youstine's

12  continuing inability to pay rent in a timely manner.  See NOL, Exhs. 7-8.  The letter states

13  that termination on less than 90 days notice is reasonable because Youstine has subjected

14  Equilon to increased exposure for additional lost rent.  NOL, Exh. 8.  The letter notes that

15  since the date of the Notice of Termination, Youstine's rent check for the months March

16  and April 2011 was returned by Youstine's financial institution marked "Non-Sufficient

17  Funds."  Id.

18        Youstine does not dispute that it has failed to timely pay Equilon all sums to which

19  Equilon is legally entitled, or that its failure in this regard is a proper ground for termination

20  of the franchise under the PMPA.  See 15 U.S.C. §§ 2802(b)(2)(C), 2802(c)(8).  Nor does

21  Youstine dispute Equilon's contention that Youstine's failure to pay amounts owing under

22  the Franchise Agreements is a proper ground for termination under § 2802(b)(2)(A) as such

23  conduct constitutes "[a] failure by the franchisee to comply with any provision of the

24

25

26

27

28

franchise, which is both reasonable and of material significance to the franchise

relationship."  See 15 U.S.C. § 2802(b)(2)(A).[8]

Instead, Youstine contends that a factual dispute exists as to whether the Notice of

Termination and Supplemental Notice of Termination are defective under the PMPA.

Specifically, Youstine argues that Equilon did not terminate its franchise in accordance

with the PMPA, for two reasons.  Youstine's Opp. at 13-14.  First, Youstine argues that

Equilon was not entitled to terminate its franchise because it knew or should have known of

Youstine's failure to pay monthly rent for more than 120 days prior to giving notification of

the termination in violation of § 2802(b)(2)(C)(i) of the PMPA.  Id. at 14.  Second,

Youstine argues that Equilon's termination of its franchise was unlawful because the Notice

of Termination is defective insofar as it states that termination is based on the total

outstanding debt, most of which was more than 120 days old.  Id.  According to Youstine,

Equilon was only entitled to demand that Youstine pay the debt which accrued within 120

days from the date of the Notice of Termination.  Id. at 16.  The Court rejects Youstine's

arguments.

The evidence before the Court demonstrates that Equilon discovered in early

February 2011 that Youstine had not paid rent from July 2010 to February 2011.  See

Styslinger Decl. ¶¶ 2-7.  Youstine has not cited any evidence supporting its contention that

Equilon had actual or constructive notice of Youstine's failure to pay rent prior to early

February 2011.  Nor is Youstine's bald assertion in this regard sufficient to create a genuine

dispute of material fact for trial.  Galen, 477 F.3d at 658.  Further, it is undisputed that on or

about April 28, 2011, Equilon sent Youstine a Notice of Termination, which states, among

other things, that Equilon is terminating the franchise due to a continuing "failure to pay

---

[8] The Franchise Agreements require Youstine to pay monthly rent and for products supplied by Equilon.  NOL, Exhs. 1-2.  They also provide that Equilon may terminate them based on Youstine's "failure to comply with any provision [therein], which . . . is both reasonable and of material significance to the relationship under [the agreements]."  Id.  The Court finds that Youstine's failure to pay monthly rent and for products constitutes a failure by Youstine "to comply with any provision of the franchise, which is both reasonable and of material significance to the franchise relationship," and therefore is a valid ground for termination.  See Harara v. ConocoPhillips Co., 377 F.Supp.2d 779, 791 (N.D. Cal. 2005); Zipper v. Sun Co., Inc., 947 F.Supp. 62, 67 (E.D. N.Y. 1996).

1   Equilon in a timely manner when due all sums to which Equilon is legally entitled."  NOL,

2   Exh. 7.  Thus, contrary to Youstine's contention, the Notice of Termination complied with

3   the PMPA's 120-day rule.  It was sent to Youstine within 120 days from when Equilon

4   acquired knowledge of an occurrence that justifies termination, i.e., Equilon's failure to pay

5   all sums to which Equilon is entitled, including rent payments for July 2010 through April

6   2011.  Equilon's Notification of Termination was given on April 28, 2011, which is within

7   120 days from when Equilon discovered in early February 2011 that Youstine had not paid

8   rent from July 2010 to February 2011.  It was also sent within 120 days from when Equilon

9   discovered that Youstine had not paid rent for March and April 2011.  Youstine has not

10  cited any evidence or authority demonstrating that Equilon failed to comply with the 120-

11  day rule.

12       To the extent the 60-day rule applies because Equilon shortened the notice period to

13  less than 90 days in its June 9, 2011 Supplemental Notice of Termination, the Court finds

14  that Equilon has complied with the 60-day rule because Equilon acted on an occurrence that

15  justifies termination within 60 days of actual or constructive knowledge of the occurrence.

16  See 15 U.S.C. § 2802(b)(2)(C)(ii).  The Supplemental Notice of Termination was sent to

17  Youstine within 60 days from when Equilon acquired knowledge of Youstine's failure to

18  pay Equilon in a timely manner when due all sums to which Equilon is legally entitled.  See

19  15 U.S.C. §§ 2802(b)(2)(C), 2802(c)(8).  Within the 60-day period prior to June 9, 2011,

20  Youstine continued to fail to timely pay Equilon all sums to which Equilon is legally

21  entitled, including monthly rent for June 2011.  See Schaeffer Decl. ¶ 7; NOL 15.  While

22  Equilon had notice of Youstine's payment default prior to 60 days before its Supplemental

23  Notification of Termination was sent, Youstine's continuing failure to pay amounts due

24  under the Franchise Agreements constitutes ongoing violations of the agreements which

25  justify termination under the PMPA.  See Chevron U.S.A., Inc. v. Finn, 851 F.2d 1227,

26  1230-1231 (9th Cir. 1988) (each new breach of the lease by the franchisee is a separate

27  violation of the lease with franchisor and constitutes a separate ground for terminating the

28  lease under the PMPA); California Petroleum Distributors Inc. v. Chevron U.S.A. Inc., 589

F.Supp. 282, 287-288 (D.C. N.Y. 1984) (franchisee's failure to pay amounts due constitutes ongoing default and ongoing franchise violations for failure to make payments are separate occurrences of non-compliance which are grounds for a franchisor to exercise termination rights); Gruber v. Mobil Oil Corp., 570 F.Supp. 1088, 1092 (E.D. Mich. 1983) ("When the alleged failure to conform with the lease is ongoing, occurring within and prior to the 120-day limitation, then the breaching event is not considered stale, but rather, viewed as a new ground for terminating the relationship each time the franchisee fails to comply."); Cal. Petroleum, 589 F.Supp. at 288 ("each of Chevron's repeated unsuccessful efforts to negotiate payment or a guarantee of the outstanding balance on California Petroleum's account, gave rise to a new event of noncompliance").  Indeed, while the PMPA is intended to erect a time bar to termination based on "old and long forgotten events," the time limitations are not intended to preclude a franchisor from exercising termination rights based on events that are repeat occurrences of previously waived franchise violations.  See Chevron, 851 F.2d at 1231; see also Wisser Co., Inc. v. Mobile Oil Corp., 730 F.2d 54, 60 (2d Cir. 1984).

        To the extent Youstine argues that the notices of termination are defective because they are based on the entire past-due debt instead of the debt that accrued within the applicable notice period, the Court rejects this argument.  As pointed out by Equilon, while the notices mention the entire past due balance as of the date of the respective notices, they do not state that termination is based on the failure to pay the entire past due debt.  NOL, Exhs. 7-8.  The notices specifically state that termination is based upon Youstine's "continuing failure to pay Equilon in a timely manner when due all sums to which Equilon is legally entitled."  Id.  Moreover, even assuming the notices of termination could be construed as being based on the entire past due debt, Youstine has not cited any authority holding that this is improper.  The plain language of the statute provides that a franchisor may terminate the franchise for "failure by the franchisee to pay to the franchisor in a timely manner when due all sums to which the franchisor is legally entitled" so long as the franchisor acts within120 days of this "occurrence" if ninety days termination notice is

given and within sixty days if less than ninety days termination notice is given.  15 U.S.C. §§ 2802(b)(2)(C), 2802(c)(8); see California Petroleum, 589 F.Supp. at 285, 287-288 (finding that franchisor properly terminated franchise for failure to pay all outstanding debt, including debt that accrued outside the 60-day notice period; concluding that franchisee's repeated failure to pay amounts past due constitutes an ongoing violation giving rise to an occurrence of an event that breached the agreement each time it occurred).  There is nothing in the statute that prohibits a franchisor from terminating a franchise based on the franchisee's failure to pay all sums due and owing, including sums that accrued both inside and outside the applicable notice period.  Nor has Youstine cited any case law supporting its position.

### ii.    Notification Requirements Under § 2804

Equilon contends that it properly terminated the Franchise Agreements because it complied with the notice requirements under § 2804.  Pl.'s Mtn. at 16-17.  In response to the instant motion, Youstine does not dispute Equilon's contention that the manner and form of notification provided satisfies the statutory requirements set forth in 15 U.S.C. § 2804(c).   Instead, Youstine argues that Equilon violated the PMPA's notice requirements by shortening the termination date to less than 90 days.  Youstine's Opp. at 18.  According to Youstine, there is no evidence that it was reasonable or necessary for Equilon to reduce the timing for termination from July 31, 2011 to June 30, 2011.  Id.

A valid termination under the PMPA must comply with the notice requirements in § 2804.  15 U.S.C. § 2802(b)(1)(A).  Section 2804 provides, in relevant part:

Prior to termination of any franchise or nonrenewal of any franchise relationship, the franchisor shall furnish notification of such termination or such nonrenewal to the franchisee who is a party to such franchise or such franchise relationship--

(1) in the manner described in subsection (c) of this section; and

(2) except as provided in subsection (b) of this section, not less than 90 days prior to the date on which such termination or nonrenewal takes effect.

(b) Additional requirements applicable to franchisor

(1) In circumstances in which it would not be reasonable for the franchisor to furnish notification, not less than 90 days prior to the date on which

- 23 -

termination or nonrenewal takes effect, as required by subsection (a)(2) of this section--

(A) such franchisor shall furnish notification to the franchisee affected thereby on the earliest date on which furnishing of such notification is reasonably practicable. . . .

15 U.S.C. § 2804(a)-(b).

"The purpose of the PMPA's notice of termination requirements is to give the dealer sufficient advance notice of the impending termination so that he can make appropriate arrangements.  Desfosses v. Wallace Energy, Inc., 836 F.2d 22, 29 (1st Cir. 1987).  Section 2804(b)(1) was included in the statute to dispense with the lengthy 90-day notice requirement where, for example, a franchisee committed serious defaults of the franchise agreement.  Wisser, 730 F.2d at 60.

Having reviewed the notices of termination, the Court finds that they comply with the "[m]anner and form of notification" requirements set forth in 15 U.S.C. § 2804(c).  See NOL, Exhs. 7,8.  The Court also finds that while the PMPA generally requires 90 days notice, it was reasonable for Equilon to provide less than 90 days notice in light of the circumstances of this case.  In early February 2011, Equilon informed Youstine that it owed Equilon for unpaid rent in the amount of $115,656.  After several months of unsuccessfully trying to collect the amount owed by Youstine, Equilon notified Youstine in a letter dated April 28, 2011 that its franchise would be terminated on July 31, 2011 (i.e., 94 days notice), when Youstine's account balance had increased to $169,218.65.  Following Youstine's receipt of the Notice of Termination, Youstine paid rent for May 2011 but did not pay its account balance.  In mid-May 2011, Youstine sent Equilon a check in the amount of $28,914, which was returned in late-May marked "Non-Sufficient Funds."  Youstine also failed to pay monthly rent for June 2011.  Thus, in order to avoid "increased exposure for additional lost rent," Equilon notified Youstine in a letter dated June 9, 2011 that it was terminating the franchise relationship effective June 30, 2011.  NOL, Exh. 8.

Under these circumstances, Equilon was justified in shortening the notice period to avoid further losses.  See Harara, 377 F.Supp.2d at 792 (10 days notice justified where

1   plaintiff failed to pay two months rent and other charges); <u>Murphy Oil USA, Inc. v. Brooks</u>

2   <u>Hauser</u>, 820 F.Supp. 437, 443 (D. Minn. 1993) (14 days notice justified where amount due

3   and owing increased from $33,176.42 to $41,376.42 within four weeks of giving 90 days

4   notice); <u>Loomis v. Gulf Oil Corp.</u>, 567 F.Supp. 591, 597 (M.D. Fla. 1984) (less than 90

5   days notice of termination justified where franchisee developed a deficiency of $56,233.52

6   in 30 to 60 days); <u>Cal. Petroleum</u>, 589 F.Supp. at 289 (finding 16 days notice proper where

7   franchisor demanded payment for four months).  The Court finds that Youstine's continued

8   failure to timely pay all sums to which Equilon is legally entitled to, despite numerous

9   demands for payment over several months, is a serious default of the Franchise Agreements

10  that justified accelerating the notice of termination in order to avoid additional deficiencies.

11  Youstine, for its part, does not contend that it would have paid its account balance had it

12  been given the full 90 days notice.  Indeed, Youstine admits that it voluntarily surrendered

13  the Station on June 17, 2011, approximately two weeks prior to the June 30, 2011

14  termination date.  <u>See</u> Youstine's Answer to Equilon's Am. Counterclaim ¶ 23.

15          To the extent Youstine argues that Equilon's termination of its franchise was not

16  made in good faith and in the normal course of business in violation of § 2802(b)(3)(D)

17  because the termination was a pretext to deprive Youstine of its statutory right to exercise

18  its ROFR, Youstine's Opp. at 20-21, the Court rejects this argument.  Section 2802(b)(3)(D)

19  concerns "grounds for nonrenewal of a franchise relationship."  This case does not involve

20  the nonrenewal of Youstine's franchise.  Instead, Youstine terminated the franchise under §

21  2802(b)(2)(C) and § 2802(c)(8) for "failure by the franchisee to pay to the franchisor in a

22  timely manner when due all sums to which the franchisor is legally entitled."  Moreover,

23  even assuming for the sake of argument that § 2802(b)(3)(D) applies to the instant case,

24  Youstine did not cite any evidence demonstrating that Equilon's termination of the

25  franchise was in bad faith or was otherwise done as a pretext to deprive Youstine's statutory

26  right to exercise its ROFR.  To the contrary, the evidence before the Court establishes that

27  Equilon terminated Youstine's franchise for its failure to timely pay Equilon all sums to

28  which Equilon is legally entitled.

### c.   Termination of Youstine's ROFR

Equilon's third counterclaim seeks, among other things, a determination that its termination of Youstine's ROFR was "appropriate."  Equilon's Am. Counterclaim ¶ 43. Equilon contends that it properly terminated Youstine's ROFR as a matter of law because Youstine failed to satisfy all past due debts as required by Article 4(a) of the ROFR contract.  Equilon's Mtn. at 18-19.  However, as pointed out by Youstine, Equilon failed to submit the ROFR contract in support of its motion.  Youstine's Opp. at 22-23.  According to Youstine, because Equilon failed to submit this document or any other evidence to support its position, Equilon's motion must be denied.  Id. at 23.  In its reply brief, Equilon does not dispute that it failed to submit the ROFR in support of its motion.  In fact, Equilon provides no argument in its reply brief with respect to this aspect of its motion.

By failing to submit the ROFR in connection with its moving papers, Equilon failed to sustain its burden to show that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  When, as here, the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  C.A.R. Transp. Brokerage Co., 213 F.3d at 480.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.  Id.  Accordingly, because Equilon has failed to sustain its initial burden under Rule 56, Equilon's motion for summary judgment as to this aspect of its declaratory relief claim is DENIED.  See Harper, 877 F.2d at 731 (if the movant fails to sustain its initial burden, no defense to an insufficient showing is required).[9]

### d.   Conclusion

The Court concludes that Equilon has demonstrated that it is entitled to a declaration that its April 28, 2011 Notice of Termination and its June 9, 2011 Supplemental Notice of

---

[9] In light of the Court's ruling, the Court declines to address Youstine's contention that Equilon waived its right to terminate its ROFR and/or is equitably estopped from terminating its ROFR.

1  Termination complied with § 2802 and § 2804 of the PMPA as a matter of law.  Equilon,

2  however, is not entitled to a declaration that it properly terminated Youstine's ROFR as a

3  matter of law.  Accordingly, Equilon's motion for summary judgment on its third

4  counterclaim for declaratory relief is GRANTED IN PART AND DENIED IN PART.[10]

5  **III.   CONCLUSION**

6        For the reasons stated above, IT IS HEREBY ORDERED THAT:

7        1.      Equilon's motion for partial summary judgment is GRANTED IN PART

8  AND DENIED IN PART.  Summary judgment is granted in favor of Equilon on its breach

9  of contract counterclaim.  Equilon is entitled to damages in the amount of $167,774.33.

10  Summary judgment is also granted in favor of Equilon on its declaratory relief claim to the

11  extent it seeks a declaration that its April 28, 2011 Notice of Termination and its June 9,

12  2011 Supplemental Notice of Termination complied with § 2802 and § 2804 of the PMPA

13  as a matter of law.  Equilon's motion is denied to the extent it seeks a declaration that it

14  properly terminated Youstine's ROFR as a matter of law.

15        2.      This Order terminates Docket 96.

16        IT IS SO ORDERED.

17  Dated: 3/11/13                                              _____

18                                                                    SAUNDRA BROWN ARMSTRONG
                                                                      United States District Judge
19

20

21

22

23

24        [10] At the end of its moving papers, Equilon argues in a conclusory fashion that
        Youstine's amended counterclaims lack merit.  Equilon's notice accompanying its motion
25      does not state that it is moving for summary judgment on Youstine's counterclaims.  Nor
        does Equilon argue in its moving or reply papers that it seeks summary judgment with
26      respect to these counterclaims.  Thus, to the extent Equilon requests summary judgment on
        Youstine's counterclaims, the Court finds that such request is not properly supported, and
27      therefore lacks merit.  See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir.
        2003) ("Our adversarial system relies on the advocates to inform the discussion and raise
28      the issues to the court.").