UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| BSD, INC., a California corporation; 21st CENTURY GROUP, INC., a California corporation; and YOUSTINE, INC., a California corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>EQUILON ENTERPRISES, LLC, a Delaware limited liability company, ANABI OIL CORPORATION, a California corporation, and DOES 1 through 100, Inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No: C 10-05223 SBA<br><br>**ORDER**<br><br>Docket 130 |

Plaintiffs BSD, Inc., 21st Century Group, Inc., and Youstine, Inc. ("Youstine") commenced the instant action against, among others, Equilon Enterprises, LLC ("Equilon") in the Superior Court of the State of California, County of Sonoma. Compl., Dkt. 1. The case was removed to this Court by Equilon on the basis of diversity jurisdiction. See Notice of Removal, Dkt. 1. On October 17, 2011, Equilon filed an amended counterclaim against Youstine alleging claims for breach of contract, conversion, and declaratory relief. Dkt. 67.

On March 11, 2013, the Court granted summary judgment in favor of Equilon on its breach of contract counterclaim and on its declaratory relief counterclaim to the extent Equilon sought a declaration that its April 28, 2011 Notice of Termination and its June 9, 2011 Supplemental Notice of Termination complied with § 2802 and § 2804 of the

1  Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 et seq., as a matter of law.
2  Dkt. 122.  The Court denied Equilon's motion to the extent it sought a declaration that it
3  properly terminated Youstine's Right of First Refusal as a matter of law.  Id.  On March 25,
4  2013, the Court granted Equilon leave to file a successive motion for summary judgment.
5  Dkt. 126.  On April 3, 2013, the parties stipulated to the dismissal of Equilon's second
6  counterclaim for conversion.  Dkt. 133.
7      The parties are presently before the Court on Equilon's motion for partial summary
8  judgment on the remaining portion of its counterclaim for declaratory relief against
9  Youstine, and motion for summary judgment on the first, second, and third claims for relief
10 alleged by Youstine in the complaint.  Dkt. 130.  Youstine opposes Equilon's motion for
11 partial summary judgment, Dkt. 134, but does not oppose Equilon's motion for summary
12 judgment.  Having read and considered the papers filed in connection with this matter and
13 being fully informed, the Court hereby GRANTS Equilon's motion for partial summary
14 judgment, and GRANTS Equilon's motion for summary judgment, for the reasons stated
15 below.  The Court, in its discretion, finds this matter suitable for resolution without oral
16 argument.  See Fed.R.Civ.P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.   BACKGROUND

The parties are familiar with the facts of this case, which will be summarized herein only to the extent that they are relevant to the instant motion.  At the time the instant action was commenced, Youstine was a franchisee operating a Shell-branded gasoline service station in California.  See Compl. ¶¶ 3, 16.  Equilon was the franchisor and owner of the gasoline service station leased by Youstine.  Id. ¶ 8.  Equilon is wholly-owned by Shell Oil Products US, and does business under the name "Shell Oil Products US."  See Dkt. 41.

From June 1, 2007 to June 17, 2011, Youstine operated a Shell-branded gasoline service station (the "Station") pursuant to a Retail Facility Lease ("Lease") and a Retail Sales Agreement ("RSA") (collectively, "the Franchise Agreements").  Equilon's Notice of Lodgment of Exhibits ("NOL"), Exhs. 1-2, Dkt. 97.  The Franchise Agreements have a

three-year term, which was originally set to expire on May 31, 2010. On or about March 3, 2010, the Franchise Agreements were extended through April 30, 2011. Id.

On July 7, 2010, Anabi Oil Corporation ("Anabi") closed on its purchase of certain retail assets of Equilon in southern and northern California. Styslinger Decl. ¶ 4. The Station was one of the properties in southern California that Anabi offered to purchase. Id. However, because Youstine operated the Station and leased the site from Equilon, Youstine was entitled to receive a statutory Right of First Refusal offer ("ROFR") under California Business & Professions Code § 20999.25. Id. As such, the Station was not included in the July 7th closing. Id. But, due to a mistake, the Station was terminated from Equilon's contract system and treated as though it had been transferred to Anabi. Id. ¶ 5. As a consequence, beginning in July 2010, Youstine's monthly rent was not electronically drafted by Equilon or anyone else. Id. ¶ 6.

In a letter dated July 9, 2010, Equilon informed Youstine that it had assigned its interest in the Franchise Agreements to Anabi effective July 7, 2010. Styslinger Decl. ¶ 6; NOL, Exh. 16. The letter also notified Youstine that Anabi, not Equilon, would be drafting Youstine's monthly rent for July and August 2010, and that all future payments should be sent to Anabi. Id.

In August 2010, Equilon accepted Anabi's offer to purchase the Station. McCammish Decl. ¶ 5. On August 18, 2010, a ROFR for the Station was sent to Youstine. Id. ¶ 6. In September 2010, Youstine accepted the ROFR under protest, and sent Equilon a check in the amount of $42,500 representing its earnest deposit payment pursuant to the terms of the ROFR. Id. ¶ 7; NOL, Exh. 9. In a letter dated September 27, 2010, Youstine's counsel informed Equilon that "[a]lthough my client intends to purchase the premises in accordance with Equilon's [ROFR] Offer rather than risk losing the right to purchase the premises, my client will and hereby does so under protest and reservation of any and all legal rights my client may have under all applicable state and federal laws. . . ." NOL, Exh. 9.

On November 2, 2010, BSD, Inc., 21st Century Group, Inc., and Youstine filed the instant action against Equilon and Anabi.  See Compl.  The complaint alleges three claims for: (1) violation of California Business & Professions Code § 20999 et seq.; (2) violation of California Business & Professions Code § 17200 et seq. ("the UCL"); and (3) declaratory relief.  Id.

In January 2011, Equilon received a renewal notice from the State of California for a commercial rental license, which covered the northern California stations operated by lessee-dealers who had received ROFRs from Equilon to purchase their respective stations.  Styslinger Decl. ¶ 7.  Because these lessee-dealer ROFR sites had been removed from Equilon's contract system in July 2010, Equilon believed the renewal notice was in error and contacted Anabi so that it could handle the license renewal.  Id.  Anabi, however, informed Equilon that the leases were never actually transferred by Equilon.  Id.  At that point, Equilon realized that two lessee-dealers in northern California who had received ROFRs from Equilon in connection with Anabi's offers to purchase the stations had not had their monthly rent drafted since July 2010.  Id. ¶ 7.  In light of this discovery, Equilon decided to review its records in early February 2011 to determine whether any of the other ROFR sites were also affected.  Id.  During this review, Equilon determined that Youstine had not paid its monthly rent since July 2010.  Id. ¶¶ 6-7.  Instead, Youstine continued to operate the Station and use products provided by Equilon without making rent payments or notifying Equilon of the discrepancy.  Id.

In a letter dated February 11, 2011, Equilon informed Youstine that it had failed to pay rent since July 2010, that the amount due under the terms of the Lease for July 2010 through February 2011 is $115,656, and that Equilon would be drafting Youstine's account for the full amount on or about February 15, 2011.  NOL, Exh. 5.  The letter also informed Youstine that "[p]ayment of this past rent shall also be a condition to closing under that certain [ROFR] dated August 18, 2010."  Id.

On February 16, 2011, Equilon attempted to electronically draft $137,962.86 from Youstine's account, which included the past-due rent for July 2010 through February 2011

and one unpaid fuel invoice in the amount of $22,306.86 that was "lifted" on February 14, 2011. Schaeffer Decl. ¶ 3. On or about February 18, 2011, the draft was returned by Youstine's financial institution due to insufficient funds. Id. On February 23, 2011, Equilon attempted to electronically draft Youstine's account in the amount of $26,092.79, which included one fuel invoice that was "lifted" on February 20, 2011. Id. On February 25, 2011, the draft for $26,092.79 was returned by Youstine's financial institution due to insufficient funds. Id.

On or about February 22, 2011, Equilon sent Youstine a letter titled "Final Demand for Payment," which states that Youstine had until March 3, 2011 to avoid termination of the franchise relationship by paying Equilon the entire balance due and owing. NOL, Exh. 6. Youstine did not pay off its outstanding balance by March 3, 2011. Schaeffer Decl. ¶ 4. In fact, Youstine failed to pay Equilon monthly rent for March and April 2011, adding $28,914 to Youstine's past due balance. Id.

On April 22, 2011, Equilon informed Youstine that it was extending the Franchise Agreements through April 30, 2012. NOL, Exh. 4. However, the letter states that:

> It is intended that this extension shall have no effect upon any pending litigation between Retailer and Shell, and is therefore Subject to our agreement that this extension shall be without prejudice to our respective legal positions as they would have existed had the effective date of expiration not been extended. Further, nothing herein shall be construed as a representation or commitment that the Agreements (a) will not be terminated prior to the end of the Extension Period, including without limitation, a termination for failure to pay Shell when due all amounts owed to Shell: or (b) will be renewed at the end of Extension Period.

Id.

On or about April 28, 2011, Equilon sent Youstine a letter titled "Notice of Termination - Failure to Pay," notifying Youstine that "Equilon intends to terminate the Lease and the RSA . . . effective July 31, 2011" based on Youstine's "continuing failure to pay Equilon in a timely manner when due all sums to which Equilon is legally entitled, for which termination of the franchise is permitted under the [PMPA] . . . and the Lease. . . ." NOL, Exh. 7. The letter also states as follows:

> Equilon gave [Youstine] a right of first refusal offer ("ROFR") to purchase the Premises under California Business and Professions Code Section

- 5 -

> 20999.25, which [Youstine] timely accepted. Section 4(a) of the ROFR provides that Equilon may terminate the ROFR if Equilon has issued a notice of termination of the Franchise Agreements in accordance with the PMPA. Therefore, in accordance with the terms and conditions of the ROFR, this letter shall serve as written notice to [Youstine] that Equilon elects to terminate the ROFR effective immediately.

Id.

On June 9, 2011, Equilon sent Youstine a letter titled "Supplemental Notice of Termination - Failure to Pay," notifying Youstine that it was terminating the Franchise Agreements effective June 30, 2011 rather than July 31, 2011 as previously stated due to Youstine's continued failure to timely pay Equilon all sums to which it is legally entitled. NOL, Exh. 8. On June 17, 2011, Youstine surrendered the station back to Equilon. Equilon's Am. Counterclaim ¶ 23, Dkt. 64. Youstine, however, failed to pay its account balance. As of June 17, 2011, Youstine's outstanding account balance is $167,774.33. Schaeffer Decl. ¶ 7.

## II.   DISCUSSION

### A.   Legal Standard

"A party may move for summary judgment, identifying each claim . . . or the part of each claim . . . on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For a dispute to be "genuine," a reasonable jury must be able to return a verdict for the nonmoving party. Id.

The moving party's burden on summary judgment depends on whether it bears the burden of proof at trial with respect to the claim or defense at issue. When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000). In such a case, the moving party has the initial

1  burden of establishing the absence of a genuine issue of fact on each issue material to its
2  case.  Id.  When the nonmoving party bears the burden of proof at trial, the moving party
3  need only point out through argument that the nonmoving party does not have enough
4  evidence of an essential element of his claim to carry his ultimate burden of persuasion at
5  trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Devereaux v. Abbey, 263 F.3d
6  1070, 1076 (9th Cir. 2001); Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 532 (9th
7  Cir. 2000).  Summary judgment for a defendant is appropriate when the plaintiff fails to
8  make a showing sufficient to establish the existence of an element essential to its case, and
9  on which it will bear the burden of proof at trial.  Cleveland v. Policy Management Sys.
10 Corp., 526 U.S. 795, 805-806 (1999).

11       Once the moving party has met its burden, the burden shifts to the nonmoving party
12 to designate specific facts showing a genuine issue for trial.  Celotex, 477 U.S. at 324;
13 Anderson, 477 U.S. at 256 ("a party opposing a properly supported motion for summary
14 judgment may not rest upon mere allegations or denials of his pleading, but must set forth
15 specific facts showing that there is a genuine issue for trial.").  A party asserting that a fact
16 is genuinely disputed must support the assertion by "citing to particular parts of materials in
17 the record, including depositions, documents, electronically stored information, affidavits
18 or declarations, stipulations (including those made for purposes of the motion only),
19 admissions, interrogatory answers, or other materials."  Fed.R.Civ.P. 56(c)(1)(A).

20       To carry its burden, the nonmoving party must show more than the mere existence
21 of a scintilla of evidence, Anderson, 477 U.S. at 252, and "do more than simply show that
22 there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co.,
23 Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In fact, the nonmoving party must
24 come forward with affirmative evidence from which a jury could reasonably render a
25 verdict in the nonmoving party's favor.  Anderson, 477 U.S. at 252, 257.  In determining
26 whether a jury could reasonably render a verdict in the nonmoving party's favor, the
27 evidence of the nonmoving party is to be believed, and all justifiable inferences are to be
28 drawn in its favor.  Id. at 255.  Nevertheless, inferences are not drawn out of the air, and it

is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Dias v. Nationwide Life Ins. Co., 700 F.Supp.2d 1204, 1214 (E.D. Cal. 2010).  To establish a genuine dispute of material fact, the nonmoving party must present affirmative evidence; bald assertions that genuine issues of material fact exist are insufficient.  Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007); see also F.T.C. v. Stefanchik, 559 F.3d 924, 929 (9th Cir. 2009) ("A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment.").  Further, evidence that is merely colorable or that is not significantly probative, is not sufficient to withstand a motion for summary judgment.  Anderson, 477 U.S. at 249-250 (citations omitted).

It is not the court's task "to scour the record in search of a genuine issue of triable fact."  Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996).  Counsel have an obligation to lay out their support clearly.  Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found."  Id.  The gist of a summary judgment motion is to require the adverse party to show that it has a claim or defense, and has evidence sufficient to allow a jury to find in its favor on that claim or defense.  Id.

**B.  Equilon's Motion for Partial Summary Judgment**

Equilon moves for partial summary judgment on the remaining portion of its third counterclaim for declaratory relief against Youstine.  Equilon's Mtn. at 4-5.  Specifically, Equilon seeks a declaration that its termination of Youstine's ROFR was "appropriate."  Equilon's Am. Counterclaim ¶ 43.  The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  "Basically, the question in each case is whether the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and

reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).

Equilon contends that it properly terminated Youstine's ROFR as a matter of law because "it issued Youstine a PMPA-compliant Notice of Termination of the Franchise Agreements." Equilon's Mtn. at 4-5. Article 4(a) of the ROFR states, in relevant part:

> (a) Equilon may terminate this Offer if, prior to the 'Closing' (as defined in the Third Party Offer): (1) Equilon has issued a notice of termination of the Facility Agreements in accordance with the Petroleum Marketing Practices Act, 15 U.S.C. Section 2801 et seq. ('PMPA'); or (2) if, on or before the Closing, [Youstine] has not satisfied all debts owed to Equilon under this or any other agreement entered into between the parties. . .

Dkt. 105-1. The term "Closing" is defined to mean "(a) the execution and delivery to 'Title Company' . . . of all documents required by this agreement and Title Company, (b) the delivery to Title Company by Purchaser of the balance of all funds due herein by cashier's check, certified check or wired funds ('Good Funds'), and (c) the closing of escrow by the Title Company in connection with the transaction contemplated by this agreement." Id. The "Facility Agreements" are defined as being comprised of the Franchise Agreements. Id.

The Court finds that Equilon properly terminated Youstine's ROFR. Following Youstine's acceptance of the ROFR under protest, Equilon terminated the Franchise Agreements prior to "Closing" due to Youstine's continued failure to timely pay Equilon all sums to which it is legally entitled under the agreements. On March 11, 2013, the Court found that Equilon's April 28, 2011 Notice of Termination and June 9, 2011 Supplemental Notice of Termination complied with § 2802 and § 2804 of the PMPA as a matter of law. Dkt. 122.

In response to Equilon's motion for partial summary judgment, Youstine argues that Equilon's termination of its franchise did not comply with the PMPA's 120/60 day rule. Youstine's Opp. at 2-7, Dkt. 134. In addition, Youstine argues that "[s]hould the Court find that Equilon had the legal right to terminate the ROFR under Section 4(a) of the ROFR due to Youstine's failure to pay all sums due and owing as of April 28, 2011, the Court should

nevertheless find that Equilon waived its right to terminate the ROFR, or is equitably estopped from rescinding the ROFR based on Equilon's acts and omissions." See id. at 7-10. For the reasons stated below, the Court rejects Youstine's arguments.

### 1. PMPA's 120/60 Day Rule

Youstine contends that Equilon did not have the right to terminate the ROFR because Equilon failed to comply with the "PMPA's 120/60 day rule." Youstine's Opp. at 2-7. However, as noted above, the Court previously determined that Equilon's termination of Youstine's franchise complied with § 2802 and § 2804 of the PMPA as a matter of law, including the PMPA's 120-day and 60-day rules concerning notice. See Dkt. 122. Specifically, the Court found that the Notice of Termination complied with the PMPA's 120-day rule because "[i]t was sent to Youstine within 120 days from when Equilon acquired knowledge of an occurrence that justifies termination, i.e., Equilon's failure to pay all sums to which Equilon is entitled, including rent payments for July 2010 through April 2011." Id. at 21. The Court further found that to the extent the 60-day rule applies, Equilon had complied with this rule because it sent the Supplemental Notice of Termination within 60 days from when Equilon acquired knowledge of Youstine's failure to pay Equilon in a timely manner when due all sums to which Equilon is legally entitled, including monthly rent for June 2011. Id.

Moreover, even if the Court were inclined to construe Youstine's opposition as a motion for leave to file a motion for reconsideration, Youstine's "motion" does not comply with the Civil Local Rules of this Court. The Local Rules specify that a motion for reconsideration cannot be filed unless the party seeking reconsideration has first sought and obtained leave to file such a motion in accordance with Civil Local Rule 7-9. Local Rule 7-9 states:

> (b) Form and Content of Motion for Leave. A motion for leave to file a motion for reconsideration must be made in accordance with the requirements of Civil L.R. 7-9. The moving party must specifically show:
>
> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for

reconsideration did not know such fact or law at the time of the interlocutory order; or

(2) The emergence of new material facts or a change of law occurring after the time of such order; or

(3) A manifest failure by the Court to consider material acts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Youstine has not complied with the requirements of Local Rule 7-9. Youstine's opposition does not identify any material difference in fact or law since the issuance of the Court's March 11, 2013 Order, the emergence of new material facts or a change of law, or any material facts or dispositive legal arguments which the Court did not consider. Instead, Youstine attempts to reargue the merits of whether Equilon complied with the PMPA's notice requirements. Youstine merely repeats arguments which the Court has already considered and rejected in direct contradiction to Local Rule 7-9(c). See Civ. L.R. 7-9(c) (authorizing the imposition of sanctions where the motion for leave to file a motion for reconsideration repeats arguments previously made to the Court). Youstine's failure to comply with Local Rule 7-9 constitutes grounds for denying its "motion." See Tri–Valley CAREs v. U.S. Dept. of Energy, 671 F.3d 1113, 1131 (9th Cir. 2012) ("Denial of a motion as the result of a failure to comply with local rules is well within a district court's discretion."); Reiser v. Du Bois, 2013 WL 685201, at *1 (N.D. Cal. 2013) (Armstrong, J.) (denying motion for leave to file a motion for reconsideration where party violated Local Rule 7-9 by merely repeating arguments which the Court had already considered and rejected).

### 2. Waiver

Next, Youstine contends that Equilon waived its right to terminate the ROFR because Equilon tendered the ROFR "knowing that it had failed to draft [rent from Youstine's] account." See Youstine's Opp. at 7-8. Without elaboration or legal analysis, Youstine contends that Equilon's conduct "was the very 'clear, unequivocal and decisive act' confirming its waiver of the right to cancel the agreement," citing U.S. v. Chichster, 312 F.2d 275, 282 (9th Cir. 1963).

"Waiver is the intentional relinquishment of a known right with knowledge of its existence and the intent to relinquish it." United States v. King Features Entm't, Inc., 843 F.2d 394, 399 (9th Cir. 1988). "An implied waiver will be found where the conduct relied upon is 'clear, decisive and unequivocal of a purpose to waive the legal rights involved.' " United States v. Amwest Surety Ins. Co., 54 F.3d 601, 602-603 (9th Cir. 1995) (quoting Groves v. Prickett, 420 F.2d 1119, 1125 (9th Cir. 1970)).

The Court finds that Youstine has failed to establish a genuine dispute for trial on the issue of whether Equilon waived its right to terminate the ROFR. Youstine does not argue that Equilon expressly waived its right to terminate the ROFR. Rather, Youstine contends that Equilon's waiver is implied based on Equilon's conduct. However, Youstine has failed to adduce any evidence of a "clear, decisive and unequivocal" intent on the part of Equilon to relinquish its right to terminate the ROFR. In fact, the evidence in the record demonstrates the opposite; Equilon timely exercised its right to terminate the ROFR in accordance with the terms of the ROFR. The evidence shows that, due to a mistake, Equilon failed to draft monthly rent from Youstine's account from July 2010 to February 2011. Styslinger Decl. ¶¶ 5-7. The evidence further shows that, upon discovering its mistake in February 2011, Equilon promptly informed Youstine that it had failed to pay rent since July 2010 and that payment of this past rent shall be a condition to closing under the ROFR. NOL, Exh. 5. The evidence also shows that on or about April 28, 2011, Equilon sent Youstine a letter titled "Notice of Termination - Failure to Pay," informing Youstine that it intends to terminate the franchise based on Youstine's continuing failure to pay it in a timely manner when due all sums to which it is legally entitled, and that it elects to terminate the ROFR effective immediately based on its issuance of a notice of termination of the Franchise Agreements in accordance with the PMPA. NOL, Exh. 7.

Youstine, for its part, has not cited any evidence in the record substantiating its contention that Equilon waived its right to terminate the ROFR because Equilon was aware that Youstine had not paid rent for several months prior to Youstine's acceptance of the ROFR in September 2010. Indeed, the Court previously found that the "evidence before

the Court demonstrates that Equilon discovered in early February 2011 that Youstine had not paid rent from July 2010 to February 2011." See Dkt. 122.  In so finding, the Court noted that "Youstine has not cited any evidence supporting its contention that Equilon had actual or constructive notice of Youstine's failure to pay rent prior to early February 2011." Id.  While neither party has conducted business with the requisite diligence, Youstine, again, has failed to cite any evidence showing that Equilon was aware of its failure to draft Youstine's account prior to early February 2011.  Nor has Youstine otherwise shown that Equilon waived its right to terminate the ROFR.  Accordingly, Youstine's waiver defense fails.

### 3. Equitable Estoppel

Finally, Youstine contends that Equilon should be estopped from terminating the ROFR.  Youstine's Opp. at 8-10.  Equitable estoppel is a doctrine adjusting the relative rights of parties based upon consideration of justice and good conscience.  U.S. v. Georgia-Pacific Co., 421 F.2d 92, 95 (9th Cir. 1970).  "Equitable estoppel prevents a party from asserting a strict legal right after another party has been led to form a reasonable belief that the right would not be asserted."  Keller Foundation/Case Foundation v. Tracy, 696 F.3d 835, 847 (9th Cir. 2012).   Because equitable estoppel effectively bars a party from asserting a legal right, its application is "strictly limited by equitable considerations and courts must apply it with caution and restraint."  Id.

The elements of estoppel are that: "(1) the party to be estopped knows the facts, (2) he or she intends that his or her conduct will be acted on or must so act that the party invoking estoppel has a right to believe it is so intended, (3) the party invoking estoppel must be ignorant of the true facts, and (4) he or she must detrimentally rely on the former's conduct."  Lehman v. United States, 154 F.3d 1010, 1016 (9th Cir. 1998); Keller Foundation/Case Foundation, 696 F.3d at 848.

Youstine's estoppel defense is without merit.  First, as discussed above, Youstine has not adduced any evidence showing that Equilon was aware that Youstine had failed to pay rent for several months prior to Youstine's acceptance of the ROFR.  Second, Youstine has

1  not shown that it reasonably relied to its detriment on Equilon's conduct.  Youstine has not
2  offered any argument or evidence demonstrating that Equilon's failure to draft several rent
3  payments prior to Youstine's acceptance of the ROFR led Youstine to reasonably believe
4  that Equilon did not intend to enforce its right to the rent payments and/or to terminate the
5  ROFR in the event Equilon issued a notice of termination based on Youstine's failure to
6  timely pay all sums owed to Equilon.  Finally, Youstine does not contend, let alone
7  demonstrate, that it was ignorant of the true facts.

8        C.     **Equilon's Motion for Summary Judgment**

9       Equilon moves for summary judgment on the first, second, and third claims for relief
10 alleged by Youstine in the complaint.  Equilon's Mtn. at 8-10.  Equilon contends that
11 summary judgment is appropriate because Youstine cannot demonstrate that the ROFR
12 violates § 20999.25, and because the proper termination of the franchise and ROFR
13 precludes Youstine from recovering the remedies it seeks.  Id.  Youstine has not filed an
14 opposition or otherwise responded to Equilon's motion.

15      While this Court's Standing Orders provide that the failure to file an opposition to
16 any motion "shall constitute consent to the granting of the motion," Civil Standing Orders
17 at 4, the Ninth Circuit has held that a district court may not grant a motion for summary
18 judgment simply because the nonmoving party does not file an opposition, even if the
19 failure to oppose violates a local rule.  See Martinez v. Stanford, 323 F.3d 1178, 1182-1183
20 (9th Cir. 2003); see also Fed.R.Civ.P. 56, Adv. Com. Notes, 2010 Amend. ("summary
21 judgment cannot be granted by default even if there is a complete failure to respond to the
22 motion").  Thus, the Court will determine whether Equilon is entitled to summary
23 judgment.

24      Youstine alleges three claims for relief against Equilon: (1) violation of § 20999, et
25 seq.; (2) violation of the UCL; and (3) declaratory relief.  See Compl.  Youstine's first claim
26
27
28

asserts that Equilon violated § 20999.25(a)[1] by failing to provide a "bona fide" ROFR. Id. ¶¶ 19-23. More specifically, Youstine alleges that Equilon failed to provide a ROFR that is "on the same terms and conditions as Anabi's offer to Equilon," and failed to provide an offer at "a fair market value price" in good faith and "on terms and conditions that are commercially reasonable." See id. ¶¶ 19, 22-23. Youstine's second claim alleges that Equilon engaged in "unfair and/or fraudulent business practices" by violating § 20999.25(a). Id. ¶¶ 32-33. Finally, Youstine's third claim seeks, among other things, a declaration regarding whether the ROFR is a bona fide offer within the meaning of § 20999.25(a), and a declaration regarding "[w]hether Equilon should be enjoined from selling the subject premises and whether Anabi should be enjoined from purchasing the subject premises pursuant to California Business and Professions Code § 20999.3 until the conclusion of this action." Id. ¶ 41.

The Court finds that summary judgment in favor of Equilon is appropriate. Equilon has sustained its initial burden on summary judgment by pointing out that Youstine cannot demonstrate that the ROFR violated § 20999.25(a). See Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) ("On an issue as to which the nonmoving party will have the burden of proof, . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case."). Youstine has failed to come forward with evidence demonstrating that a genuine dispute exists for trial as to whether the ROFR violated § 20999.25(a). See id. ("If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.' "). Accordingly, because all of Youstine's claims are predicated on a violation of § 20999.25(a), summary judgment in

---

[1] Section 20999.25(a) provides: "In the case of leased marketing premises as to which the franchisor owns a fee interest, the franchisor shall not sell, transfer, or assign to another person the franchisor's interest in the premises unless the franchisor has first either made a bona fide offer to sell, transfer, or assign to the franchisee the franchisor's interest in the premises . . . or, if applicable, offered to the franchisee a right of first refusal of any bona fide offer acceptable to the franchisor made by another to purchase the franchisor's interest in the premises." Cal. Bus. & Prof. Code § 20999.25(a).

1 favor or Equilon is warranted.

2 Moreover, summary judgment is also warranted in favor of Equilon because
3 Equilon's termination of the franchise and the ROFR before Equilon's interest in the
4 franchise was sold, transferred or assigned to another person forecloses the remedies sought
5 by Youstine.  Section 20999.25(a) prohibits a franchisor from selling, transferring, or
6 assigning to another person the franchisor's interest in the premises unless the franchisor
7 has "offered to the franchisee a right of first refusal of any bona fide offer acceptable to the
8 franchisor made by another to purchase the franchisor's interest in the premises."  Cal. Bus.
9 & Prof. Code § 20999.25(a).  "Any person who violates any provision of this chapter may
10 be sued . . . for temporary and permanent injunctive relief and for damages, if any, and the
11 costs of suit."  Cal. Bus. & Prof. Code § 20999.3.

12 In addition to damages, restitution and costs, Youstine seeks injunctive and equitable
13 relief in the form of an order requiring Equilon to modify the ROFR in accordance with §
14 20999, et seq., to refrain from engaging in unfair and fraudulent business practices,
15 including retaliatory conduct based on the filing of the instant action, and to refrain from
16 selling the Station until a judicial determination is made regarding the purchase price of the
17 Station and the reformation of the ROFR.  Compl. at 5, 9.  Youstine also seeks a
18 declaration that Youstine's ROFR is not a "bona fide offer" within the meaning of §
19 20999.25, that certain terms in the ROFR are commercially unreasonable, that the sale price
20 in the ROFR is commercially unreasonable and exceeds the fair market value of the
21 Station, and that Equilon should be enjoined from selling the Station.  Id. at 10.

22 Here, because Equilon properly terminated the franchise and the ROFR before
23 Youstine purchased the Station pursuant to the ROFR, the injunctive, equitable, and
24 declaratory relief Youstine seeks is no longer available.  Youstine's entitlement to such
25 remedies is predicated on the existence of a franchise relationship and the ROFR.[2]  Further,

---

[2] The Court notes that the availability of injunctive, equitable, and declaratory relief depends on the viability of a legal claim entitling Youstine to such relief.  As discussed above, the Court has found that Equilon is entitled to summary judgment on Youstine's claims.

- 16 -

because Equilon did not sell, transfer or assign its interest in the Station prior to the termination of the franchise and the ROFR, Youstine is not entitled to damages or restitution arising out of an improper sale, transfer or assignment of the Station.  Finally, because Youstine's claims fail as a matter of law, Youstine is not entitled to costs of suit.

## III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Equilon's motion for partial summary judgment on the remaining portion of its third counterclaim for declaratory relief against Youstine is GRANTED.

2. Equilon's motion for summary judgment on Youstine's first, second, and third claims for relief is GRANTED.

3. The Clerk shall close the file and terminate all pending matters.

IT IS SO ORDERED.

Dated: 7/26/13

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge